Alana Nightingale Dawson v. Ector Henriquez The dispute in this case is a narrow one. Both parties agree that to be a crime involving moral turpitude, the crime must have two elements, reprehensible conduct and a culpable state of mind. Both parties also agree, or at least the government does not dispute, that for Maryland's fourth degree sexual offense to be a crime involving moral turpitude, the lack of consent must have some degree of scienter. As the board has continually said, to be a culpable state of mind, there must be intentional conduct that is itself wrongful, or at the very least, in some cases, reckless not. Do you agree that this is reprehensible conduct? Problem one, you agree that it's reprehensible conduct? No, Your Honor, we do not. Because you said there were two things. There are two elements that are required to be a crime involving moral turpitude. How is it not reprehensible conduct? The statute itself covers conduct that is not necessarily reprehensible conduct. So the question, to be clear, is not whether the conduct that the defendant petitioner here engaged in was reprehensible conduct, but whether or not the statute sweeps in. So what part of the statute speaks to conduct that is not reprehensible? If you have a situation where a person, where you have, say, a 15-year-old and a 19-year-old, where the 15-year-old is unable to engage in, unable to legally consent, and this statute specifically covers whether it's groping of the buttocks, or as this court has recognized not reprehensible? If the person doesn't know that the consent is lacking, or if the person affirmatively consents. But the 19-year-old doesn't know the consent is lacking? Correct. Yes, Your Honor. But to be clear, this court need not reach reprehensible conduct. Do you acknowledge that we apply the modified categorical approach here? Yes, Your Honor. This is a divisible crime, right? Fourth degree sexual offense is a divisible crime, correct. So we get to go, so we get to go, we get to look at jury instructions, we get to look at the Shepard-approved documents, do we not, to determine which crime Mr. Enriquez was convicted of. But there's no dispute between the parties which crime he was convicted of. What are the jury instructions for 3308B1? They're not, they're, we looked at sexual, in this court case, I don't believe the jury instructions are in the record, but the question here, to be clear, for modified categorical approach, you would look at jury instructions to determine what crime he was convicted of, and there's no dispute that he was convicted of B1. And that's the only purpose. So what are the jury instructions for B1, just in general? What are the elements of B1? The elements of B1 is intentional sexual contact, which is contact for purposes of sexual gratification or abuse, and without consent. So the only mens rea included in the statute, statutory language, which is paramount, as this court said in Martinez, is intentional sexual contact. There's no mens rea on the face of the statute as to lack of consent. Do you have a Maryland case in which someone has been convicted of 3308B1 without mens rea? Yes, this case, Your Honor, and the Supreme Court has said, and this court has recognized that one's own case can be an example of where the statute is applied to a situation. And the Supreme Court has also said that you have Maryland cases that have acquitted on where, in fact, several, where people were acquitted of conduct under this provision where lack of consent was inferred from status. Your Honor, the only case that we're aware of that dealt with B1, so if Your Honor is referring to the cases that the government cites in its brief, almost all of those cases did not involve the statute at issue here, B1. Those cases, the cases that the government quotes where it says that you must have force or resistance were cases involving second and third degree sexual assault or rape, which has a force element in addition to the lack of consent. No, Travis and Tate involve, I believe, 3308B1. Correct, Travis did involve that and Travis involved the sleeping victim, but the Travis didn't, the court did not speak to the mens rea required. But it involved, the mens rea, the defendant was acquitted because the allegation was because the victim was asleep, the victim was unable to consent. Correct, the defendant there was acquitted there, but this court, and Tate, the question here, though, is whether or not the statute can be applied, and this court has said could be applied to situations where... Well, the realistic, there has to be a realistic probability that it would be applied. Yes, Your Honor, and in this case it was. The judge specifically accepted the plea on the understanding that there was no knowledge as to... No, but the district court did not tie that statement to 3308B. There were two offenses at play at the time that the trial court made that statement about, so it's the age, right? In terms of lack of consent? Yes. That was the basis, and the reason that we know that the statement where the statement that that's not an element of the offense as to consent is because the statute, there's only one of the two statute issues here has a without consent in the specific language of the statute itself, and Maryland has said that to have a specific intent for an element it must be spelled out, so the fact, I mean, this court, Justin Martinez, looked at the text of the statute and found the text of the statute, if it doesn't include a requirement, it's not there. The text of this statute does not say without consent. Now, if this court disagrees with that basis, it's important to recall that the Board of Immigration Appeals did not reach its conclusion on the basis that this court, that the government is positing. The Court of Immigration Appeals here said it does not matter, I'm sorry, the Board of Immigration Appeals is at most negligence because there's intentional conduct, so if this court's view is that the interpretation of the statute is incorrect, then at a minimum it must send it back to the Board to consider under the proper interpretation. It also bears noting that the government itself agreed with the interpretation that age-based offenses is what's, that you could be convicted here based solely on this victim's age. The Board adopted that interpretation. This court recently sent back Jimenez-Cedillo for the Board to reconsider. In that case, it involved third-degree sexual offense. Sorry, Your Honor. I'm still hanging on. You're going very fast, so I'm trying to keep up, and some of the things you're saying are not ringing, are not comporting with my recollection of the facts. What did you say about the BIA's statement about 308B1? Yes, ma'am. Your Honor, at joint appendix four, the Board's decision here said two things that are important. First, it said it is not dispositive that the statute does not also include an explicit mens rea with respect to lack of consent element, and it cites Jimenez-Cedillo, which this court just sent back to the Board to reconsider. But that, okay. And the state, I believe the statement you're referring to that I made was, it says the respondent contends on appeal that the mens rea with respect to lack of consent may amount to nothing more than criminal negligence. And this is in the fourth paragraph at the end. And the Board said, however, whereas here the statute also provides that the actus reis be done intentionally and under the circumstances set forth by the statute, i.e., lack of consent of the victim, we conclude that a sufficiently culpable mental state is involved. So in that portion, the Board is saying the fact that there is a mens rea as to the intention and to the conduct itself is enough. The BIA cited Travis and Tate to conclude that 3308B1 requires that lack of consent of the victim be proven as an element of the crime rather than implied by virtue of the status of the victim alone. Well, so in Tate, it said a very, they were talking about a very particularized specific intent or special mens rea. There it was talking about the intent as to the conduct itself, which is in 301. It's not, it's the definition of sexual conduct. In Travis, it said, correct that it has to be established. But if you look at the way that the statute is set up, there's nothing to say that you can't establish it by age or by status. But the more important point is it also doesn't say. Although it hasn't been so applied. That's what Tate and Travis tell us. That is not how it has been applied. And here, the statement that you rely on by the district court is not necessarily tied to 3308B1. Because there are two offenses. If you're referring to the plea colloquy, the reason the plea colloquy at JA164, the reason, the nonconsensual piece of this, the statute that has without consent in the statutory language is only the sexual assault, the sexual offense statute. And so they, if the person, if the petitioner here did not, needed to know that consent was lacking and didn't, and if there was a mens rea required for that, this plea colloquy would not have established that he was guilty and the court could not have accepted his guilty plea. And so the plea, this is the judge confirming with the prosecutor that all of the elements of the offenses that he was pleading guilty to were present. And the offense that included a without consent element was the provision, was the sexual offense statute. And the prosecutor specifically said as to not knowing the age of the victim, that that was not an element of the offense. And then the court says, so the nonconsensual piece of this is that she didn't have the age to consent. So we know here that he has maintained throughout, that he has maintained before the court that he did not have awareness of the fact that made his conduct illegal. We don't know whether that comment related to which of the two offenses that he pleaded to, the comment was linked to is all I'm saying. He pleaded guilty to two, fourth degree sex offense and second degree assault. So you, it isn't clear. And then he said the nonconsensual piece of this is that she doesn't have the age to consent. So you don't know whether that statement refers to the conviction under the fourth degree sex offense or the second degree assault. Respectfully, Your Honor, for two reasons, we believe that it had to refer to the fourth degree sexual offense. That's fine. But I'm just, you're, you're positing that as though it's dispositive and it isn't. Well, in this, in this case, the reason we view it as dispositive is because the court couldn't have accepted his plea if there is a mens rea required for consent. And he's saying he didn't have awareness of the fact that consent was lacking. There's nothing else in the plea quality that goes to consent. And of the two statutes he was convicted of, only one has a specific without consent element spelled out in it. And that's the assault you didn't need consent for. So that, is that what you're saying? It's not specifically spelled out as part of the statutory language. Part of the statute. Right. And so that's why, and the prosecutor follows up and, and, and seems to be indicating that perhaps it's related to both offenses, but there wouldn't be a Does it matter that looking at the underlying documents and the plea colloquy and the charging document that he, in fact, did know her age? There, well, there's no, he did not. He maintained he did not. I know there was an initial The plea colloquy, it talks about how they're pleading guilty because the 14 year old is, has a child with his best friend. And so he wanted to resolve it. I mean, he, the person that he assaulted was his, had a child with his best friend. He was not, he maintained before the court and, and what he proffered in his plea colloquy was that he was not aware of her age, but, but it does not matter if Where does it say he was, where does it say he was not aware? At JA 163, they specifically says that, and this is his attorney, Ms. Goldblatt, the only He says he did not know the age of the victim, ES, at the time, and he did tell the police that in his interview and the doctor as well. That would be the only addition he would like to make to the record. But it doesn't ultimately, even if this court thinks that the actual conduct he engaged in was a crime involving moral turpitude, that's not correct. The, the board's decision in this case is contrary to the board's prior decisions as to what is required and said that mens rea was not required. If this court were to affirm in this case, having sent him back, you could end up in a situation where you have third degree sexual offense, which Maryland courts have said is a more serious crime being determined not to be a crime involving moral turpitude. It depends on the, it depends, as you have argued, on the elements of the statute and how it's interpreted by Maryland case law and the jury instructions, I'm still, the question is whether or not the offender needs to have knowledge of the fact that there's lack of consent, regardless of whether lack of consent is due to sex. It has to be proved that it was against the will and without the consent of the victim. Those, well, and if you look at the prosecuting documents that are comparable to what this court also relied on in Martinez, the prosecuting documents, for example, dealing with the situation in the house, where the only element in the prosecuting documents reflecting lack of consent was that the person did not affirmatively offer consent. And that's consistent with Perez, where they took the jury instruction and altered it to say that you have to affirmatively agree to the conduct. So silence can be, as reflected in the charging documents that we submitted, sufficient. Is that the affirmative proof that the jury instructions require to find guilt? The jury instructions of the court countenanced in Perez did reference affirmative agreeing. And in the charging documents, where the Thurman case, there was a situation where the offender did not, there was no request not to do it. It was simply an engagement. And the charging documents simply said that the victim did not agree to the conduct. And that doesn't reflect whether the offender knew or had reason to know that consent was lacking in that situation. Thank you. Good morning. Good morning. May it please the Court, Lindsay Corliss for the Respondent. We'd ask that this Court deny the petition for review. It is undisputed in this case that Petitioner was convicted under a Maryland sexual assault statute that criminalizes the non-consensual, intentional touching of a victim's genital, anal, or other intimate area for a sexual or abusive purpose. So the only issue that's remaining here in this case is whether or not that conviction constituted a categorical crime involving moral turpitude. This Court has deferred to the Board's definition of a crime involving moral turpitude as a crime that involves vile, reprehensible, or base conduct and some degree of scienter. And Petitioner's statute of conviction satisfies both prongs of that definition. So the, you would agree that we can affirm only on the grounds that the agency adopted it, right? Well, so the agency didn't parse the elements of the statute. Maybe if you could just answer that question first, then you can go into your argument. Okay. We can only affirm on the basis of the agency used, right? That's Pornbook Supreme Court law. Well, actually, so a de novo review of purely legal issues is an exception to Chenery. And so this Court can affirm the conclusion of the board. Really? I've never seen that exception. Do you have a fourth-circuit case law that recognizes this exception to Chenery? De novo, I don't know the... That trumps the Chenery view? Yes. I thought that the theory was that we gave the agency the authority. We regard them, at least in the past, we regard them as the expert. They make the factual findings, but they also make legal determination. And we can't go in there and substitute for them our legal rationale. But you tell me that isn't the Chenery rule at all. It's not. So what the agency is an expert on is interpreting the terms in the INA. So a crime involving moral turpitude is a term that this Court defers to the board on. So that's why Jimenez-Cedillo went back to the board on remand rather than the Court just deciding the issue. Because the issue there was whether or not the board changed course of its definition of a crime involving moral turpitude to include crimes where lack of the board was an expert on. This Court and all of the courts have found that the board is not an expert when it comes to analyzing state law. So this Court, even if the board had carefully parsed the elements of the statute at hand here, it might have made my job easier here, but this Court wouldn't have deferred to their analysis on that statute anyway. They would have deferred to the definition of crime involving moral turpitude, but they would have gone back to the elements itself in the statute in order to find out whether or not that fits the board's definition of crime involving moral turpitude. So the Board of Immigration Appeals, what standard of review do we apply in determining whether the crime at issue is a CIMT? You would apply de novo review. Okay. What did the board base its determination on? Well, so the board, it found that the statute necessarily involved reprehensible conduct. And Petitioner made the specific argument that they again raised here that that lack of consent element could be proved by victim status alone. Now the board did not go back to the statute in order to find out if that was true or not, because at the time, Jimenez-Cedillo was their precedent at the time, and that precedent said whether or not the lack of consent was explicit or implicit. Right. I'm just explaining that that's what the board based its decision on at the time. So at the time, they did not go through the statute. They just took their existing law, which was good at the time that they made their decision, and dismissed or rejected Petitioner's argument on that basis. Moreover, the BIA, it did, I mean, it observed that the immigration judge relied on Enrique Jimenez-Cedillo, but the Board of Immigration Appeals, I thought, went beyond that. For example, they cited Travis and Tate to conclude that 3308B1 requires that lack of consent of the victim be proven as an element of the crime rather than implied by virtue of the status of the victim alone. That is correct. If I could also just address one thing that we've been discussing about the model jury instructions. Now, Perez actually does talk about the model jury instructions as applied to specifically 3-308B1. And in that case, that was a case involving a 14-year-old child and her adult stepfather. They did not say that the lack of consent piece could be automatically established just because she was 14 and this person was an adult, as Petitioner urges this court to understand the statute. Instead, what happened was that case hinged on a jury instruction that the judge provided when the jury came back to ask the question, what against the will and without consent meant. And the judge in that case stated that consent means actually agreeing to the act rather than merely submitting as a result of threats or coercion. So the instruction that the Court of Special Appeals affirmed as correct still required that lack of consent either be shown by something that the victim actually affirmatively did in order to demonstrate that she didn't consent. Or if she did submit, then it was because of threats or coercion, some action by the defendant that made the submission. I want to go back to the questions that Judge Schmatz had because I want to make sure I Where in the record is the BIA's position supported, support your argument that the statute requires a showing of forced compulsion or fear? The board didn't hold that. Okay. So how can we now consider it without speculating on what they might have said or should have said? If the question is whether or not If they didn't say that, correct? Well, you can review to find out what the elements of the state statute say. So this court has expertise on state statutes that the board does not have expertise on. So even if the board had reviewed that state statute, this court would still subject that review to If the question is whether or not So say you would not have expertise on state statutes, don't they pass on them all the time as to whether the statutes are crimes against moral turpitude? That's what they do, isn't it? Not always. A lot of times they use circuit law that is already found on certain aspects. They can rely on state law. They certainly can. I don't think that's your argument. At least as I understood it, we still get to determine de novo whether the crime at issue is a crime involving moral turpitude. Yes. Yes. And the board did find that the mens rea did attach to the conduct and stated that the conduct, the intentional conduct, occurred in the circumstance of a victim actually resisting or submitting because of the defendant's actions. It actually does say that this meets the requirements because the defendant intentionally committed an act that was reprehensible. What about the points in the plea colloquy where it seems like everybody, including the government, agreed that consent need not be a concern here? I do think that they were talking about two separate statutes. But I will say, even if we were to find that the judge there made a mistake, a plea colloquy is only in our record in order to establish the fact of a conviction. And a plea colloquy is not binding precedent on any other court. In the categorical method, we are supposed to look at more authoritative state sources on what the law actually is. Modified categorical. So the Shepard-approved documents. Well, so what we call Shepard documents. Well, we look at the Shepard documents in order to establish the fact of the conviction, what he was actually convicted of. So we know from the plea colloquy that he was convicted of 3-308B1. But from there, after we get that information, the only thing that we're looking at is what does 3-308B1 mean. And when you do that, you have to go to authoritative state sources. Now, had Petitioner wanted to collaterally attack his plea bargain and appeal that, he could perhaps have done so if the judge did get those elements of his crime wrong. However, a collateral attack can't be entertained in immigration court. So it would be a completely separate issue. And also, part of the reality of the plea colloquy is that they were allowing this person to plead down from one crime that matched the elements that he actually admitted to, that carried a 20-year sentence, to two crimes with elements that didn't quite match his actual conduct, which carried only one year sentence that became suspended. So it was unlikely that this was going to go up on review anyway. And so there was sort of a level of casualness in which the elements of the crime was discussed. Petitioner points to the fact that they got that lack of consent part wrong. But he doesn't mention the fact that the statute specifically states that the sexual conduct under this statute has to be something other than that which is incidental to intercourse. We know from the documents in the record that what actually happens is that he had sexual intercourse with this child. And there's no evidence that there was any touching of intimate parts that wasn't incidental to that. So we know that he pled guilty to something that didn't match the elements of the crime that he actually committed. But when we are looking at something under the modified categorical approach, all you can look at is what was he convicted of and what does that mean based on the statute and how the courts have interpreted that statute. So what do you think our remand in the other case does to this case? Has no effect at all? Because I do think you're left with a non-symmetrical approach if we don't remand this. I do agree with you on some levels. So if this court finds that the lack of consent element must be established by either the victim's conduct in resisting or the defendant's conduct in creating an atmosphere where she couldn't resist, then the existing definition of a crime involving moral turpitude as reprehensible conduct and a sufficient mens rea, that would satisfy that in and of itself. If you find that petitioner's argument is correct, that the lack of consent piece could be established by the victim's status alone, then at that point, then remand would be, then this court should remand at that point because then we need to know in the absence of humana sedio, is that sufficiently reprehensible conduct? What is the definition of a crime involving moral turpitude and does it encompass that? I thought the statute involved in humana sedio was a strict liability child abuse statute. Right, and I think that that is what petitioner is trying to make this statute look like. The reason that I didn't see that it necessarily followed is you have the leap. We've said that a strict liability statute would certainly be impacted. The question here and what the hurdle that petitioner would have to get over is, it's trying to say is that this is also a strict liability statute. That's correct and it's not. You can see, especially in Perez, a case where a 14-year-old girl and the defendant is the victim and the defendant is an adult man over 21, her lack of consent piece was, the element of her lack of consent was not established solely by the fact that she was a child. The jury had to find that either it was against her will and she expressed that or if she submitted that it was because she was doing so as a result of threats or coercion. So either way, we have the fact that even under this statute, a lack of consent element cannot just be proved by a victim status alone. By status, yeah. And that is what separates this from the matter of humana sedio, a far broader case that reached much more broadly than that. If there are not any more questions on that, I just wanted to quickly address some of the statements of the type of conduct that petitioner contends may be prosecuted under the statute. Petitioner presents several hypotheticals but doesn't actually present any actual cases where that sort of conduct was actually prosecuted. There aren't any cases that I could find or that petitioner cited where there was a 19-year-old who was prosecuted for kissing his 15-year-old date. There are no cases like that at all. Instead, what you have is a lot of, for instance, where they state that the lips are an intimate area, the only case that they cite is In-Rae Najee, a case where that statement is solely in dicta and what actually happened there was that the defendant came up to a teenage victim who was alone with children that she was babysitting, grabbed her by the breasts, made sexually explicit comments to her, put her in a headlock, bit her cheek, and the way that the court described it, stuck his tongue down her throat. So that's a far different scenario than a 15-year-old and a 19-year-old kissing. And the court found there that the touching of the intimate area was the touching of the breasts. And then they go on to state in dicta that the lips could also be considered an intimate area. However, there's no reason to assume that the court would have found so had there not been these significant aggravating factors. If you compare the requirements, the elements under this statute to say simple assault, you can see why non-consensual kissing has historically and repeatedly been charged as simple assault in Maryland, which allows for defense of a reasonable belief that the person was going to consent to the kiss. Here, where you have two levers of mens rea, first, they have to establish that the touching was intentional, and second, that they have to establish that the touching was done for a special purpose, for sexual gratification, sexual arousal, or abuse. You're going to be hard-pressed to establish that a simple kiss, with no aggravating factors, would actually satisfy that standard and was definitely done for sexual arousal, sexual gratification, or abuse. And if there are no further questions, I think I'd just conclude and ask that this Court not disturb the Board's decision. Thank you. Thank you very much. Thank you, Your Honors. Just a few points in rebuttal. First, Duane A. Alvarez specifically says that... Can you talk really as loud as you possibly can? Yes, Your Honor. And slow down just a little bit. Yes, Your Honor. Because we're interested in what you have to say. Okay. First, the Supreme Court in Duane A. Alvarez specifically said that a petitioner can point to his own conviction as an example. There's no requirement that you need authoritative law, as the government posits, and in both Shepard and recognized in Duane A. Alvarez, a case that involves a plea is still relevant. In fact, in Duane A. Alvarez, it was a plea case. In fact, in Martinez, that this Court just recently decided, where the Court focused on the statute itself and on charging documents, Judge Niemeyer in dissent also said it would have potentially been possible for the petitioner there to point to his own case. Could I just quote the Supreme Court in Duane A. Alvarez? Yes, Your Honor. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts, in fact, did apply the statute in the specific non-generic manner for which he argues. So it would certainly be useful to support your argument that at some point that Marilyn indicated that it agreed with your interpretation. Yes, Your Honor, it would have been helpful. And could I just, if we do not agree with you, because the whole crux of your argument seems to be, is to establish this as a strict liability statute. If we do not agree with you that this is a strict liability statute, can you still prevail? Yes, Your Honor, because at a minimum this statute, whether you think it's a strict liability statute or a negligence statute, the statute wouldn't qualify. Even as to recklessness, the only time the board, with respect to statutes like this, has extended to recklessness, a should have known standard, is when the sexual offense statute involves children. So even if Your Honor thinks that this is not a strict liability statute, there's nothing on the face of the statute to say that negligence isn't sufficient. And in Herd, which we cite at page 18 of our opening brief, Marilyn courts have said that if there is a mens rea element, it must be specifically spelled out. And there is no mens rea element. And we get to ignore the jury instructions about what the state has to prove, why again? Well, Your Honor, Perez, the way the government describes Perez is not actually. No, no, I was reading the jury instructions. Is this at JA 238? I'm just reading the 3308B1 jury instructions. Yes, Your Honor. Requiring what the state has to prove. And this is that sexual contact was made against the will and without the consent. Yes. Yes, you do not need to ignore those jury instructions. Okay. But there's nothing in the jury instructions that require that the defendant consciously disregarded a risk of lack of consent. There's nothing that required that the defendant knew that there was no consent. So in the prosecuting charging documents that we submitted, the victim said that they in fact did not offer consent, but there's no affirmative showing of lack of consent, no saying no. And in Perez, the government said that Perez required resistance or force. But in fact, if you look at Perez, the Perez court recounted the instruction for second-degree rape, the first part which talked about reasonable fear, the second sentence which talked about circumstances where a person would fear from her safety, and the court said those two instructions only apply for rape. And so you had to take those sentences away. And this is at 284 and 285 in Perez. Fourth-degree sexual offense does not require proof of force, only lack of consent. And the consent instruction that was affirmed by the Maryland court in that case said consent means actually agreeing to the act rather than merely submitting as a result of threats or coercion. And so you see in the charging documents that even if this court does not view it as a strict liability offense, there is no reason to believe that negligence isn't sufficient. I'm sorry, tell me again what you were relying on in Perez, the language that consent means actually agreeing to the act? Both that language, which is at page 281, and then at page 284 and 285, where the court recounts the second-degree rape instruction and then says that the first two instructions concern proof of the element of force. Okay. I thought that language occurred in the context of the lower court's response to a jury question. The first quote that I gave did. The second part is the court recounting whether or not what was referring to the definition of consent and then recounting how to appropriately address that. Yes, Your Honor. Thank you. If there are no further questions, we ask that at a minimum this Court grant and send back to the BIA to consider. Thank you. Thank you very much. We will come down and say hello to the lawyers and then go to our last case.
judges: Diana Gribbon Motz, Allyson K. Duncan, Stephanie D. Thacker